Waterston & al. *v.* Getchell.

---

WATERSTON & AL. *vs.* GETCHELL.

*R* agreed to cut all the timber from certain lands of *W*, and transport it to *W's* mill, to be sawed into boards, of which *R* was to receive a certain proportion; and further agreed that the ownership of the timber should remain with *W*, till certain debts of *R* were paid, and all parts of the agreement were fulfilled. It was *held* that this was a valid agreement; and that a sale of part of the logs, after they were taken from the land, to a purchaser having notice of the terms of the contract, conveyed no title, against the owner of the land.

THIS was an action of trespass for taking and carrying away fifty pine mill logs. The defendant claimed them by purchase from one *Joseph Robinson.* In a case stated by the parties it was agreed that the logs were originally cut on land of the plaintiffs, in the winter of 1825—6. On the 12th of *December* 1825, the plaintiffs and *Robin-son* entered into a contract, by which they granted him permission to enter upon a tract of their land, and cut and carry therefrom all the pine timber suitable for boards; *Robinson* agreeing to deliver the same, to them or their agent, " at the places and for the purposes following, viz :—The one fourth part in the boom, near the mill of the said *W & als.* at *Stillwater*, free of expense, and for the use of the said *W & als.* ;—the other three fourths at *Pea-cove*, in the *Penob-scot* river, for the uses and on the conditions following, viz,—the said *W & als.* to receive the logs, transport them to their mill, saw and deliver to the said *Robinson*, within a reasonable time, three fourths of the boards made from the logs so left or delivered at *Pea-cove*, and pay forty cents per thousand, for each remaining thousand, as

their proportion of stumpage ;—the timber while at *Pea-cove* to be at the risk of the said *Robinson;* also, the expense, if any, of getting logs from the rocks, islands and falls of *Stillwater.*" The agreement further proceeded as follows :—" And it is further agreed by the said *Robinson*, that if they fail to remove from the premises aforesaid, all the pine timber of the description aforesaid, then the said *Robinson* is to pay to the said *W & als.* a sum equivalent to one fourth part of the value of such remaining timber. And it is further agreed and understood that the ownership of all the timber so cut, how or where-ever situated, shall be and continue in the hands of the said *W & als.* until all sums due them, and to *William Emerson* of *Bangor*, from the said *Robinson*, shall be paid and discharged, and all the conditions of this agreement fulfilled."

Under this agreement the logs in controversy, with others, were cut. Afterwards, pursuant to a new agreement touching the place of delivery, *Robinson* conveyed the logs down the *Penobscot* river to the upper pond at *Oldtown*-falls, and there delivered them to the plaintiffs' agent, who caused them to be run down to the lower falls at *Oldtown*, for the purpose of being sawed at the plaintiffs' mills. The defendant, knowing the terms of the contract, with-out the knowledge of the plaintiffs, took and carried away the logs sued for, which would make 15,791 feet of boards, and were worth eight dollars per thousand, in the log.

The parties agreed that if the defendant was liable for the whole value of the logs mentioned in the plaintiffs' declaration, judgment should go against him, upon default, for one hundred and seven dollars ;—and that if the action was maintainable only for a part of the value, then judgment should be entered for that part ;—otherwise, the plaintiffs agreed to become nonsuit.

*Gilman*, for the plaintiffs.

*Allen*, for the defendant.

MELLEN C. J. delivered the opinion of the Court.

It appears that the logs in question were cut on the plaintiffs' land, and taken and carried away by the defendant. Of course he is

Waterston & al. *v.* Getchell.

responsible in damages, unless he acquired a title to them by his purchase of *Robinson*. Whether he did acquire one, as to all, or any part of the specified quantity, is the question to be decided; and the decision must depend on the construction of the special contract between *Robinson* and the plaintiffs.

As to the one fourth part of the logs, mentioned in the agreement, there can be no doubt. *Robinson* had nothing to do with them but to haul and deliver them at a certain place, for the use of the plaintiffs; and he did so deliver them to their agent at the upper pond, at *Oldtown* falls. As to the remaining three fourths, he was by the contract to deliver them also to the plaintiffs, at a certain place, where they were to receive them, transport them to their own mills, and saw them; and within a reasonable time, deliver to *Robinson* three fourths of the boards made from them. This quantity of logs was also carried to the plaintiffs' mills by their agent, for the purpose of being there sawed. It was also expressly agreed by the plaintiffs and *Robinson*, that the ownership of all timber so cut, how or wherever situated, should be and continue in the hands of the plaintiffs, till all the conditions of the agreement should be complied with, and all monies due to them, and *William Emerson*, should be paid; and it does not appear that such conditions have been complied with, or such sums paid. This provision in the contract was well known to the defendant, at the time he committed the alleged trespass. From these terms of the contract, thus stated, it is evident that *Robinson* was not a part owner of the logs, nor an agent to sell them; they belonged to the plaintiffs; and he was to be compensated for his labor in cutting and hauling the logs, by a certain proportion of the boards, to be made from them. As to these, the plaintiffs had a reasonable time allowed, within which to deliver them; but to prevent all misapprehension dispute or eventual loss, it was agreed that the ownership should continue in the plaintiffs as before mentioned. Now, without deciding whether a purchaser of the logs from *Robinson*, without notice of the terms and condition of the agreement, could be protected, it is manifest that the defendant, having notice at the time, could gain no title, nor exercise any control or right over the property, beyond those which *Robinson* himself had and could

---

exercise; and he had expressly bound himself to exercise none. We are of opinion that the action is well maintained, for the value of all the logs taken, and according to the agreement of the parties, a default must be entered, and judgment for the plaintiffs for one hundred and seven dollars.